## STATE *v.* SWAYZE.

THERE is no presumption of law that a taking of cattle from the range with intent to convert them to the taker's use is felonious, where he sets up a claim at the time that such animals are lost or abandoned property, in apparent good faith, and under circumstances justifying such belief, although in fact the owner had neither lost such animals nor abandoned his property in them.

NATURAL marks on such animals, although serving to identify them, do not indicate the ownership, and it is error in the court to instruct the jury with regard to such natural marks, as constituting marks of ownership.

IT IS ERROR in the court to instruct the jury not to regard "mere slight variances" between the testimony of witnesses as affecting their credit.

APPEAL from Baker County.

*Lawrence & Isom and Bonham & Ramsey*, for appellant.

*P. H. D'Arcy*, for respondent.

By the Court, WATSON, C. J.:

This appeal is from a judgment of imprisonment upon a conviction for larceny of a cow and calf. The evidence given at the trial appears in the bill of exceptions forming part of the record in the case. Hindman, the prosecuting witness, claimed the animals as his property, while the appellant contended they were lost or abandoned animals, and had no owner. Under this claim, he drove them off the

range and put his brand upon them, and then turned them back on the range again.   After this, Hindman put the cow and calf in a Mr. Lowe's corral and sent word to appellant, who came, and they threw the cow and examined her for marks and brands.   Appellant still disputed Hindman's ownership, and afterwards drove the animals out of Lowe's field, where Hindman left them, and put them in his own field.   He afterwards turned them back on the range.

There is nothing in the circumstances of the case or the conduct of the appellant, as shown by the evidence in the record before us, which seems to us sufficient to impugn the appellant's good faith in making such claim.   The animals were not branded, and the evidence as to the cow having been marked previous to the time appellant assumed dominion over her, is not very satisfactory.   His testimony that the cow had been known and recognized as an estray by the stock men in the vicinity for four or five years previously, and that he had been informed by his neighbors that she was an estray, does not appear to have been contradicted on the trial.   And no act of concealment from which either consciousness of guilt or a disposition to avoid any responsibility for his conduct in the premises can be inferred, is shown.   There was evidence that the animals were the property of Hindman, as alleged in the indictment.

Upon this state of the case before the jury, the court charged in effect that the taking of the animals out of the range with intent to appropriate the entire dominion over them and convert them to the taker's use, raised a presumption of a guilty and felonious intent, and that it would be the duty of the jury to so find, unless there was something else in the evidence to rebut the presumption.   The court also charged that "property which has such natural marks as cattle or domestic animals can never be considered as

having no sign or mark about them by which their owner can be discovered or recognized, as may be the case with money or chattels which may be like a thousand others."

These instructions taken together, it seems to us, precluded the jury from finding any other verdict than one of guilt. And we think, in view of the facts in evidence before the jury, they were certainly erroneous, and prejudicial to the appellant's rights. The circumstances of the taking and conversion were all before the jury. They might have found therefrom that such act was done under such a state of facts as justified the appellant in believing, and that he did actually believe that the animals were lost or abandoned property. And if the jury had been satisfied that such was the case from the proofs before them, they should have acquitted the appellant. For he could not be held liable criminally for an act done under such a misapprehension, although the animals did turn out to be Hindman's property. (2 Bish. Crim. L., secs. 879, 881, 882.)

Many of the circumstances attending the taking and interference with the property by the appellant, if not all, tended to negative the charge of felonious intent, and when the court told the jury "that the taking of such live animals out of the range with intent to appropriate the entire dominion over them and convert them to the taker's use, can not be presumed to be in good faith," and a little further on in his charge, that such taking was presumptively felonious, the tendency of such instructions, if not their real intention, was to deprive the appellant of the benefit of such exculpatory circumstances, in his defense. But the instruction as to "natural marks" on this class of live animals goes even farther. Under the rule, it announces there can be no defense upon the ground of mistake, in taking and converting such property as having been abandoned or lost, if it turns

out not to be such in fact. The rule is doubtless well settled that the finder of personal property lost or mislaid, which has such marks of ownership upon it as will enable him to determine who the owner is, must restore it, and will be deemed guilty of larceny if with such knowledge of the true owner he takes it with intent to convert it to his own use and deprive the owner thereof.

Now, if the natural marks on live animals are to be considered such marks of ownership, as the instruction plainly assumes, then every taking with intent to convert to the taker's use, where the property is not in fact lost or abandoned by the owner, no matter what the appearances may be, will be larceny.

But this simply confuses marks of ownership with those of identity.

An owner of such live animals may identify his property by such natural marks, while they afford no indication whatever as to the ownership.

The court also charged the jury "that mere immaterial discrepancies between the testimony of witnesses to the same point, do not necessarily show that one has sworn falsely; and you should not regard mere slight variances between witnesses as showing that they have not spoken the truth." We suppose the court only intended this as a caution to the jury not to give too much importance to contradictions between witnesses not calculated to materially affect their credit, and did not intend it to be understood as an inflexible rule for their guidance. But the instruction was so worded that the jury might readily conclude that they were bound to follow it according to its literal meaning, and it may have influenced their verdict.

Taken as it reads it is clearly wrong. "Mere slight variances" between witnesses may in many instances be suffi-

cient to enable the jury to determine the degree of credit to which each is entitled, and answer the purpose equally as well as contradictions of a graver character.

For these reasons, we are of opinion the appellant's conviction was improper, and that the judgment of the circuit court should be reversed.

Judgment reversed.